**UNITED STATES of America,**
**Appellant,**

**v.**

**The MONTREAL TRUST COMPANY, and Tillie V. Lechtzier, Executors of the Estate of Isidor J. Klein, Deceased, Appellees.**

**No. 86, Docket 29607.**

United States Court of Appeals
Second Circuit.

Argued Nov. 1, 1965.

Decided Jan. 6, 1966.

Certiorari Denied April 25, 1966.

See 86 S.Ct. 1366.

---

240

Laurence Vogel, Asst. U. S. Atty., New York City, (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, and Irwin B. Robins, Asst. U. S. Atty., New York City, on the brief), for appellant.

Henry Harfield, of Shearman & Sterling, New York City (John E. Hoffman, Jr., New York City, on the brief), for appellees.

Before KAUFMAN and HAYS, Circuit Judges, and TIMBERS, District Judge.*

KAUFMAN, Circuit Judge:

The question before us on this appeal is akin to those repeatedly presented to federal and state courts ever since the Supreme Court's decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), opened the door to continually widening assertions of state-court jurisdiction by means of "long-arm" service of process statutes. On this appeal, we are asked to determine whether the deceased Isidor J. Klein "transacted" sufficient business within New York to subject the executor of his estate to the jurisdiction of the New York courts, and, by virtue of the incorporative provisions of Federal Rules of Civil Procedure 4(e),[1] 4(f) and 4(i), to the jurisdiction of the District Court for the Southern District of New York.

The government brought this action to recover income taxes, interest and penalties aggregating $9,862,053.34, allegedly owed by Klein for the years 1944, 1945 and 1946. Pursuant to Section 302,[2]

* Chief Judge of the District Court of Connecticut, sitting by designation.

1. Fed.R.Civ.P. 4(e) provides in pertinent part:
   "Whenever a statute or rule of court of the state in which the district court is held provides (1) for the service of a summons * * * upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

2. C.P.L.R. § 302 provides in relevant part:
   "A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the

of New York's Civil Practice Law and Rules, service was made upon Klein's executor,[3] the Montreal Trust Company ("Montreal"), by personal delivery of process in Canada. Challenging this method of invoking the jurisdiction of the District Court, Montreal asserted that service upon it was unauthorized under § 302 because Klein's corporate activities did not amount to the personal transaction of business by him in this state. After a preliminary hearing, Judge McLean accepted this contention and ruled that the District Court did not have jurisdiction to hear the merits of the government's claim, finding that Klein did not transact business in New York within the meaning of § 302. On the government's motion, we granted leave to appeal pursuant to 28 U.S.C. § 1292(b). We reverse and remand because, at this juncture of the case, we conclude that the facts as found by the District Judge demonstrate that New York had sufficient contacts with the transactions which are the subject matter of this case to justify asserting its jurisdiction.

The facts upon which this appeal is based are susceptible of brief exposition. During the relevant taxable years, Klein was the managing director of United Distillers Ltd. ("United"), a publicly owned Canadian company which operated a distillery at Vancouver, B. C. United's function in the corporate hierarchy was to produce whiskey for its subsidiaries, John Dunbar & Company, Ltd. ("Dunbar") and Duncan Harwood & Company, Ltd. ("Harwood"). The "exclusive agent for the entire world" for the distribution of Harwood and Dunbar whiskey was Agencias Distilladores, S. A. ("Agencias"), a Cuban corporation with which Klein's brother-in-law, H. H. Klein, was connected in some undetermined capacity.

Judge McLean's opinion discloses that in April 1944, R. C. Williams & Company, Inc. ("Williams"), a New York corporation, and Agencias entered into a contract by which Williams became the exclusive sub-agent for the distribution of Harwood whiskey in the United States. Under this contract, Williams purchased substantial quantities of Harwood whiskey from Agencias at $19.05 per case and sold the whiskey throughout the country. Since Agencias purchased Harwood whiskey at $8.05 per case, it made a profit of $11.00 on each sale. The District Court made no finding as to the manner in which Agencias distributed this profit, but did determine that as a condition to the making of the contract with Agencias,

"* * * Klein insisted that Williams * * * agree to put on its payroll as salesmen various relatives and friends of Klein. Williams did so and paid them a 'commission' of 60¢ per case of whiskey sold."

Moreover, Judge McLean's opinion reveals that substantial amounts were paid to these designees of Klein and that "they did little or nothing to earn them." And we discover from an examination of the hearing transcript, that Klein, on several occasions, wrote to Irving A. Koerner, Williams' liquor division manager in New York, instructing him as to the method of distributing the 60¢ per case commission and giving him the names of the recipients of these payments. Such commissions, ultimately, were paid by checks drawn on Williams' account at the Chase National Bank in New York City.

The District Judge found, furthermore, that in 1944 and 1945, Murray A. Schutz, operating in San Francisco as Distillers Distributing Company, commenced purchasing Dunbar whiskey from United. Schutz purchased this whiskey for shipment to American military posts in the Far East and Europe. As a pre-condition to the contract between Schutz and United, Judge McLean found that Klein

acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
1. transacts any business within the state * * *."

3. Tillie V. Lechtzier, co-executrix of the Klein estate, was also served. But she has not appeared in this action.

"insisted that Schutz agree to give two-thirds of Schutz's profits to Samuel Sager of New York City, Klein's brother-in-law."

In this connection, the transcript discloses that Schutz visited Klein in Vancouver, Canada where negotiations were commenced. At Klein's request, Schutz then went to New York City for further negotiations and the drafting and execution of a contract giving Sager two-thirds of Schutz's profits.

On these facts, the government contends that the funds earned by Williams and Schutz and paid as "commissions" to Klein's relatives and friends were properly the income of Klein for tax purposes, under the familiar attribution of income rules of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). In response, Montreal argues, as a matter of substantive law, that the government's application of the Horst doctrine to these facts is erroneous and that, in any event, as a matter of procedure, Klein did not "transact" business in New York within the meaning of the "long-arm" statute. On this appeal, we restrict ourselves to the jurisdictional issue and do not pass on the merits of the government's claim for taxes.

I.

Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), the area in which states are constitutionally permitted to assert their jurisdiction has undergone great expansion. International Shoe Co. v. State of Washington, supra, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), are among the landmarks pointing the way in this direction. And New York, like many other states, enacted its "long-arm" statute with the intention of taking advantage of the "new enclave" opened by these cases. New York Advisory Comm. Rep. (N.Y. Legis. Doc., 1958, No. 13),

39–40; 1 Weinstein-Korn-Miller, New York Civil Practice § 302.06.

There is no serious challenge on this appeal to the constitutional power of New York to enact § 302. International Shoe Co. v. State of Washington, supra, authorizes a state to assert its jurisdiction over non-domiciliaries with whom it has sufficient minimum contacts, "such that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. To meet this requirement, New York in enacting § 302 has not sought to obtain full *in personam* jurisdiction over non-domiciliaries who transact business within its boundaries. Rather, New York has limited itself to jurisdiction only in those "causes of action" arising out of activity conducted within the state. Since such a limitation of jurisdiction complies with the mandate of International Shoe Co., supra, we are not here presented with a constitutional issue but with a narrow question of statutory interpretation—did Klein, within the meaning of the "long-arm" statute, transact business in New York.

The District Court, in dealing with this issue at the preliminary hearing, we believe, placed a too heavy burden on the government in requiring it to establish a strong factual basis upon which jurisdiction is predicated in this case. At this early stage of the proceedings, the government should not have been required to submit proof which would, in effect, establish the validity of its claim and its right to the relief sought. Rather, to bring § 302 into operation, and thereby invoke the jurisdiction of the District Court, the government was required to establish only prima facie tax-related transactions of Klein in New York. Cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[4] We must, therefore, determine whether on the allegations and facts before Judge McLean,

4. Our conclusion that the government established at least threshold jurisdiction at the preliminary hearing does not relieve it at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence. Cf. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

Klein was transacting sufficient business within New York so as to bring him within the reach of the "long-arm" statute and require a trial on the merits.

## II.

■ Montreal's position on this appeal is that if Klein had any contacts at all with New York, they were limited to conduct in his capacity as general manager of United. And, it urges, that when one engages in activity within New York in a fiduciary capacity, jurisdiction cannot be obtained over him in his individual capacity. Cf. Boas and Associates v. Vernier, 22 A.D.2d 561, 257 N.Y.S.2d 487 (1st Dept. 1965). But, we find, the premise of this argument untenable. While it is true that Williams and Schutz were the contractual agents of the corporations Klein managed, the government has charged that they were also his personal agents in a scheme to divert funds to Klein's designees. Based on the allegations and findings, Klein could not have been acting in his role as a corporate officer when he allegedly directed a course of payments to his relatives and friends. It would be ironic, indeed, if the very corporations whose funds Klein is charged with diverting were to supply him with a shield against suit for tax liability allegedly incurred in connection with this purported breach of his fiduciary duty.

■ Since for jurisdictional purposes, we find that Klein's contacts with this state were thus not insulated by a fiduciary shield, we proceed to determine if the activities conducted by Klein's personal agents [5] constitute the transaction of business within this state. In this regard, we note that the execution of a contract, such as the Schutz-Sager agreement in New York is considered by the New York Courts a vital contact with this state. Thus, in Patrick Ellam, Inc. v.

Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545 (1963), the Supreme Court, Westchester County, decided that the making of a contract in New York to transport a vessel from New York City to St. Thomas was sufficient to give the court jurisdiction over a breach of that contract. For a similar result by the Supreme Court, New York County, see Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (1964).

We are aware, however, that the formal act of executing a contract in New York, by itself, may not be wholly determinative of the question of jurisdiction. For example, we held in Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965), that "merely * * * negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York" are insufficient to give New York personal jurisdiction over non-domiciliaries. But, Judge Waterman, writing for the Court, recognized that if negotiations had taken place in New York in furtherance of the contract, New York would then be justified in asserting its jurisdiction. In the instant case, however, the contract between Schutz and Sager was not executed by mail nor negotiated by telephone, but signed by the parties personally in New York after extended negotiations here. And, further evidence of the substantiality of Klein's contacts with New York can be found in the fact that New York was the center from which Williams, in its capacity as Klein's personal agent, disbursed the 60¢ per case commission to Klein's designees. Indeed, as we have noted, the Williams' checks in payment of these commissions were drawn in New York on a New York bank.

■ We believe that these activities demonstrate more than a remote connection with New York. In deciding, under

---

5. Our dissenting colleague states that Klein did not exercise sufficient control over Williams and Schutz to make them his agents. We believe it is difficult to find stronger indicia of control than the ready willingness of Williams and Schutz to obey Klein's instructions without dispute and pay their own money to Klein's relatives and friends for services which Judge McLean found were never in fact performed. In his search for a "scintilla of evidence" our colleague has ignored the reasonable inferences which flow from the testimony and documents.

New York law, the substantiality of contacts with this state for purposes of § 302, we must be satisfied, before that section is properly invoked, that a non-domiciliary over whom jurisdiction is sought, purposefully availed himself of the privilege of conducting activities within New York. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). We are satisfied here, that Klein, through the activities conducted by his agents in New York, transacted sufficient business in this state to justify the government's service of process upon his estate pursuant to the provisions of New York's "long-arm" statute.

Other contentions advanced on this appeal have been examined and found without merit.

Reversed and remanded.

TIMBERS, District Judge (concurring in part and dissenting in part):

### QUESTION PRESENTED

The question presented on this appeal is whether the United States government, in an action to recover income taxes, interest and penalties aggregating $9,862,053.34 based on tax liabilities assessed in absentia 11 years ago and claimed to have arisen 20 years ago by reason of the alleged constructive receipt in Canada of income from United States sources, may, under the New York long arm statute, invoke the jurisdiction of the District Court for the Southern District of New York, by process served in Vancouver, British Columbia, Canada, over a Canadian banking institution as executor of a Canadian citizen and resident who died 10 years ago, neither the Canadian executor nor the Canadian decedent having been at any time a domiciliary of New York or of the United States, the Canadian executor concededly having no assets in New York and never having transacted business in New York, and the decedent concededly not having transacted business in New York in person but allegedly *through agents*.

The majority holds, pursuant to C.P.L.R. § 302(a) (1) and Rules 4(e), 4(f) and 4(i), Fed.R.Civ.P., that the district court has personal jurisdiction over The Montreal Trust Company, executor of Isidor J. Klein, deceased, a non-domiciliary, as to a cause of action arising from the transaction of business within the State of New York by Klein acting, not in person, but *through agents*.

Since I concur with the majority upon those issues hereinafter specified, I would agree with the conclusion reached by the majority if I could accept its premise that Klein was engaged in the state *through agents* in the transacting of any business out of which the alleged cause of action arises. I find no basis either in the findings of the district court or in the evidence before the district court to support such a premise. I am of the opinion, therefore, that, absent evidentiary support for the conclusion reached by the majority, our direction to the district court to assert personal jurisdiction pursuant to § 302 over Montreal Trust violates the due process requirements of the United States Constitution and renders § 302 unconstitutional, as applied. Upon that issue, accordingly, I respectfully but emphatically dissent.

### DISTRICT COURT DECISIONS

The district court held two hearings on the jurisdictional issues raised. Following the first hearing, it filed an opinion May 1, 1964 holding that service of process pursuant to § 302 upon Montreal Trust was valid *provided that Klein in the years in question transacted business within the State of New York.* 35 F.R.D. 216. Four months later, pursuant to notice given to counsel in its May 1 opinion, the district court held a two day hearing, at which testimony and documents were received in evidence, to determine that fact, following which it filed an opinion October 20, 1964 embodying detailed findings of fact and holding that the government's cause of action did not arise from the transaction of any business by Klein within the State of New York during the years in question. 235 F.Supp. 345. In my opinion, both decisions of the district court are correct.

The district court's May 1, 1964 decision that under § 302 personal jurisdiction may be exercised over Montreal Trust as executor of a non-domiciliary, with respect to a cause of action arising out of the transaction of business within the state by Klein, *if* he transacted any such business, and that out of state personal service was properly made as provided in § 313, is unassailable.[1]

The crux of the district court's October 20, 1964 decision is as follows (235 F. Supp. 345, 348):

> "The evidence shows that Klein, in his capacity as managing director of United, Harwood and Dunbar, was the man in charge of these operations for those companies. It may be assumed for the sake of argument that these operations amounted to the transaction of business in New York by United, Harwood and Dunbar. But plaintiff's claim for income taxes is against Klein individually, not against the corporations, and unless Klein himself transacted business in New York in the years in question, either in person or through an agent, and derived income therefrom, there is no statutory basis under C.P.L.R. § 302 for the extra-territorial service upon Klein's executor. It is clear that the activities of Klein as a corporate officer on behalf of the corporations do not constitute the transaction of business by Klein individually. The evidence does not support plaintiff's claim that the acts of Duncan Harwood & Co. Ltd. and of John Dunbar & Co. Ltd. were the personal acts of Klein. Nor is there any showing that these companies were agents of Klein individually. The evidence must show more than activity of Klein as a corporate officer if the service upon his executor is to be sustained."

Since the findings of fact upon which the district court's October 20, 1964 decision is based are not clearly erroneous, Rule 52(a), Fed.R.Civ.P.,[2] but in my opin-

---

1. The district court's May 1, 1964 opinion, 35 F.R.D. 216, has been cited with approval in United States v. First National City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) and Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 549 (4 Cir. 1965).

2. Nor does the majority hold that the district court's findings of fact are clearly erroneous; it accepts the facts as found but disagrees with the conclusions reached: " * * * we conclude that *the facts as found by the District Judge* demonstrate that New York had sufficient contacts with the transactions which are the subject matter of this case to justify asserting its jurisdiction." (Emphasis added.)

It should be noted, however, that the majority's conclusion appears to be based, not only upon the "facts as found by the District Judge," but upon "allegations" of the government as distinguished from proven facts, e. g., "We must, therefore, determine whether on the *allegations* and facts before Judge McLean, Klein was transacting sufficient business within New York so as to bring him within the reach of the 'long-arm' statute" and "Based on the *allegations* and findings, Klein could not have been acting in his role as a corporate officer when he allegedly directed a course of payments to his relatives and friends."

The burden of proof unquestionably is upon the party asserting jurisdiction to prove the essential facts by a preponderance of the evidence when jurisdiction is challenged. This rule, uniformly followed in the federal courts, was enunciated by the Supreme Court in McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), as follows: "The authority which the statute vests in the court to enforce the limitations of its judiction precludes the idea that jurisdiction may be maintained by mere *averment* or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his *allegations* of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by *competent proof*. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party *alleging* jurisdiction justify his *allegations* by a *preponderance of evidence*. We think that only in this way may the practice of the District Courts be harmonized with

ion are clearly correct, and since the district court's conclusions of law in my view are eminently sound, I would affirm.

### ISSUES NARROWED

In order to focus precisely upon the point of divergence between the majority and the limited issue upon which I dissent—the *agency* question—it is important at the outset to indicate those issues upon which we are in accord and which, although claimed by one side or the other along the way, do not enter into the narrow difference between the majority decision and the portion of this opinion which constitutes my dissent. The issues not in dispute are:

(1) *C.P.L.R. § 302(a) (1), as Enacted, Represents a Constitutional Assertion of Power by New York*

Although in my opinion the assertion of personal jurisdiction pursuant to § 302 by the district court over Montreal Trust upon the facts as found by the district court would be violative of the due process requirements of the United States Constitution and would render § 302 unconstitutional, *as applied*, infra, p. 257, I nevertheless agree with the majority that there can be no serious question as to the constitutional power of New York to *enact* § 302.

The New York Legislature, acting upon a study and recommendation by the New York Advisory Committee on Practice and Procedure, modeled § 302 upon the Illinois long arm statute, Ill.Stat.Ann. ch. 110, § 17 (Smith-Hurd 1956), thus discarding the concept of "doing business" as the exclusive test of jurisdiction and providing (insofar as is here pertinent)

that personal jurisdiction may be asserted over any non-domiciliary or his executor if, "in person or through an agent," he "transacts any business within the state," as long as the particular cause of action asserted is one arising from such transaction of business. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 451–452, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68, 72 (1965), citing: N.Y. Advisory Comm. Rep. (N.Y. Legis.Doc., 1958, No. 13) pp. 37–41. Thus, the Legislature, in enacting § 302, intended to "occupy the new enclave, now opened * * * by International Shoe Co. v. Washington, [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]" which Judge Learned Hand, Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 36 (2 Cir. 1948), hesitated in 1948 to say that the New York courts would occupy; and, in occupying the new enclave, the New York Court of Appeals has made it very clear, in Longines-Wittnauer, supra at 450–452, 456–457, that New York intends to adhere to the "standard for assessing the irreducible minimum forum activities constitutionally requisite to subject * * * nonresident individuals to personal jurisdiction" as reformulated by the Supreme Court in International Shoe Co. v. Washington, supra; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Specifically, in Longines-Wittnauer, supra at 451, Judge Fuld noted that the Supreme Court in Denckla had cautioned that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the per-

---

the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty." (Emphasis added.) Accord, Arnold v. Troccoli, 344 F.2d 842, 845 (2 Cir. 1965); Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reservation, 339 F.2d 360, 362 (9 Cir. 1964); Industrial Electronics Corp. v. Cline, 330 F.2d 480, 482 (3 Cir. 1964); Janzen v. Goos, 302 F.2d 421, 424 (8

Cir. 1962); Compania Distribuidora v. Cristina Copper Mines, 114 F.Supp. 454, 455–456 (S.D.N.Y.1953); Murarka v. Bachrack, 108 F.Supp. 597 (S.D.N.Y. 1952); Bullock v. Wiebe Construction Co., 241 F.Supp. 961, 962 (S.D.Iowa 1965); Magnaflux Corp. v. Foerster, 223 F.Supp. 552, 565 (N.D.Ill.1963) (applying Ill.Stat.Ann. ch. 110, § 17 [Smith-Hurd 1956], the Illinois counterpart of the New York long arm statute).

sonal jurisdiction of state courts" (357 U.S. at 251) and "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. * * * [I]t is essential in each case that there be *some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State*, thus invoking the benefits and protections of its laws" (357 U.S. at 253). (Emphasis added.)

I agree with the majority that unquestionably the enactment of § 302 represents a constitutional assertion of power by New York; but, as construed and limited by New York's highest court, the application of § 302 by the majority to the facts of the instant case, in my opinion, raises a grave constitutional issue.

(2) *Service of Process Under C.P.L.R. § 313 and Pursuant to Rules 4(e), 4(f) and 4(i), Fed.R.Civ.P., Was Valid*

The majority at least by implication upholds the decision of the district court, 35 F.R.D. 216, and I concur, that service of process September 9, 1963 by the United States Vice Consul in Vancouver, B. C., on the manager of Montreal Trust's Vancouver branch, was valid under § 313, which became effective September 1, 1963, in view of the provisions of Rules 4(e), 4(f) and 4(i), as amended effective July 1, 1963; and that such extraterritorial service of process in an action commenced after the effective date of the long arm statute to enforce a claim which arose, and based on alleged transaction of business which occurred, prior to enactment of the statute, does not deprive defendant of due process of law in violation of the Fifth Amendment.[3] The district court's rejection of defendant's claim based on the retroactive application of the New York long arm statute is in accord with decisions by the New York Court of Appeals on the same issue. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra at 452–455; Simonson v. International Bank, 14 N.Y.2d 281, 290, 251 N.Y.S.2d 433, 440, 200 N.E.2d 427, 432 (1964) ("CPLR § 302 has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action").

(3) *District Court's Determining Threshold Jurisdictional Issue at a Preliminary Hearing Was Proper*

This principle is so vital to the fundamental concept of the limited jurisdiction of the federal courts that no dilation is here required.[4] We recently remanded a

---

3. See United States v. First National City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965):

"* * * But under § 302(a) of the New York Civil Practice Law and Rules, 7B McKinney's Consol.Laws Ann., § 302, personal jurisdiction may be exercised over a 'non-domiciliary' who 'transacts any business within the state' as to a cause of action arising out of such transaction, in which event out-of-state personal service may be made as provided in § 313. The Federal Rules of Civil Procedure by Rule 4(e) and Rule 4(f) allow a party not an inhabitant of the State or found therein to be served with a summons in a federal court in the manner and under the circumstances prescribed by a state statute. See United States v. Montreal Trust Co., 35 F.R.D. 216."

4. The government has devoted seven pages of its brief in this Court to a point squarely at variance with its position in the district court, namely, "The District Court committed error in deciding the question of jurisdiction prior to a trial on the merits." Government Brief in Court of Appeals, pp. 7–14. In its memorandum submitted to the district court, however, the government stated, "In this case, the question is whether Isidor J. Klein acted in New York (jurisdictional issue) and not whether the Government is entitled to collect its assessment against his Estate (substantive issue). Defendant knows perfectly well that the issue at this point in the case is not whether the Estate ought to pay the assessment, but the threshold question of whether the Court has power to make a determination of that issue which will bind it and thus be entitled to full faith and credit." Government Memorandum in District Court, p. 9.

Aside from our rule that ordinarily we will not consider on appeal a point not

case to the district court for a preliminary hearing on the threshold question of whether the district court had jurisdiction under C.P.L.R. §§ 301 and 302 where the affidavits were "somewhat sketchy," "most unimpressive" and "hardly very frank." Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2 Cir. 1964). See Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583 (2 Cir. 1965).

In the instant case, the district court observed in its May 1, 1964 opinion that "the contention is made that the New York statute does not apply because Klein did not transact business within New York. This is a question of fact. * * It is not practicable to decide this question upon affidavits. A hearing will be necessary at which both parties may offer evidence on the subject." 35 F.R.D. 216, 222–223. In its October 20, 1964 opinion, the district court noted at the outset, "I shall consider only the evidence adduced at the hearing and shall disregard the allegations of the affidavits originally submitted in support of and in opposition to the motion. These allegations are made by attorneys, who obviously have no personal knowledge of the facts. It was because of the inadequacy of the affidavits in this respect that I directed that a hearing be held." 235 F.Supp. 345, 346 n. 1.

The salutary practice of determining threshold jurisdictional questions at a preliminary hearing precisely as the district court did here is so well settled as to be beyond question. Gelfand v. Tanner Motor Tours, Ltd., supra.[5]

### (4) Jurisdictional Issue Only, Not Substantive Issue of Merits of Government's Tax Claim, Is Here Involved

The district court, at the September 9, 1964 evidentiary hearing, could hardly have made it clearer when it said, "Let us get one thing straight, we are not trying the whole case here. This is a motion and, having decided a lot of legal questions on the motion, I said I would take testimony on a factual question pertaining to the motion and pertaining to the jurisdiction aspect. That is all we are doing." And the district court's October 20, 1964 decision concluded, "The only question which has been tried out upon this motion is the validity of this particular purported service. Therefore, the court's decision will be limited to that question, and in so far as the defendant seeks a final dismissal of the entire action, the motion is denied." 235 F.Supp. 345, 349.

Despite the government's representations to the district court regarding its recognition of the distinction between the jurisdictional and substantive issues,

raised below, especially one involving the very propriety of the proceeding, United States v. Vater, 259 F.2d 667, 672 (2 Cir. 1958); cf. United States v. Indiviglio, 352 F.2d 276, 279–281 (2 Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), and authorities cited at 279–280; compare United States v. Robbins, 354 F.2d 741 (2 Cir. 1965); United States v. L. N. White And Company, Inc., 359 F.2d 703 (2 Cir. 1966), the government's claim, the opposite of its position in the district court, is utterly without merit. There of course are exceptional cases where determination of jurisdiction must await trial of the substantive issues, cf. Land v. Dollar, 330 U.S. 731, 739, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Smithers v. Smith, 204 U.S. 632, 645, 27 S.Ct. 297, 51 L.Ed. 656 (1907). This is not such a case.

5. The statute invoked by the government to bring to this Court the instant appeal from an interlocutory order, 28 U.S.C. § 1292(b), reflects a Congressional policy to expedite final preliminary determination of just such an issue as is here involved—a threshold jurisdictional issue—in advance of a trial on the merits, to avoid unnecessary protracted and expensive litigation. See Sen.Rep. No. 2434, 85th Cong., 2d Sess. (1958); 1958 U.S.Code Cong. & Adm. News, pp. 5255, 5256; Matthies v. Seymour Manufacturing Co., 270 F.2d 365 (2 Cir. 1959), rehearing denied, 271 F.2d 740 (en banc), cert. denied, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 554 (1960), and order of this Court of January 13, 1959 allowing appeal from order of district court, 23 F.R.D. 64, to the extent it denied defendants' motion to dismiss for lack of jurisdiction; In re Heddendorf, 263 F.2d 887, 888 (1 Cir. 1959); Wright, The Interlocutory Appeals Act of 1958, 23 F.R.D. 199, 204 (1959).

supra note 4, it has emerged after some slippery footwork with quite a different position in this Court: "* * * the fact is inescapable that, in the context of the jurisdictional dispute before the court, it is impossible to separate the issue of jurisdiction from the basic issue on the merits" and "Since the issue of the taxability to Klein of the income arising from these transactions is the very issue on the merits there is no escape from the conclusion that jurisdiction and merits are, in this case, inextricably related." Government Brief in Court of Appeals, pp. 8–9.

The majority quite correctly has rejected the government's claim in this respect and has made it clear that "On this appeal, we restrict ourselves to the jurisdictional issue and do not pass on the merits of the government's claim for taxes." I concur. This is in accord with our decision in Arrowsmith v. United Press International, 320 F.2d 219, 221 (2 Cir. 1963) (en banc) that the validity of the substantive claim is legally irrelevant to the question of the court's jurisdiction and may not be considered until the jurisdictional issue is resolved. This approach also is in accord with Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra at 460, where the court said " * * * it cannot be made too clear that we are concerned solely with the problem of the court's jurisdiction over the person of a nonresident defendant and not with the question of his ultimate liability to a particular plaintiff; that issue is to be considered only after it is decided, on the basis of section 302, that the defendant is subject to the in personam jurisdiction of our courts."

(5) *Commissioner's Assessment of Taxes in New York Did Not Give Rise to a Presumption of Jurisdiction*

Before the district court the government bluntly asserted that "The Commissioner assessed the tax in the State of New York where the tax accrued and there is no reason in the world why that determination should not satisfy jurisdiction here," referring to jurisdiction over

"a man who never comes to this State of New York physically, who never sets foot in a hotel in New York, [but who] may be served in the rice paddy in Indochina." Statement by Government Counsel to District Court, September 10, 1964. The district court, 235 F.Supp. 345, 349, rejected this "presumption of jurisdiction from assessment" argument of the government, stating "Plaintiff's final contention is that even though there is no such evidence ['that Klein, as an individual, in 1944, 1945 and 1946, transacted business in New York'], such a finding can be based upon the mere fact that the Internal Revenue Service assessed income taxes against Klein for those years. No pertinent authority is cited for this proposition and in my opinion it is without merit. * * * If plaintiff's contention were sound, no hearing on the question of fact would ever be necessary, and all that the government would need to do to sustain the service, at least in the first instance, would be to produce a certified copy of the tax assessment. I am unwilling thus to extend the presumption referred to in [Halle v. Commissioner, 175 F.2d 500, 502 (2 Cir. 1949), cert. denied, 338 U.S. 949, 70 S.Ct. 485, 94 L.Ed. 586 (1950)]."

The government has pressed its claim again in this Court, asserting that "Where, as here, the facts which are the foundation of both jurisdiction and the merits are identical, the burden of going forward with the evidence should not be shifted, as it has been by the District Court, in such a way as to destroy the effectiveness of the presumption that attaches to the Commissioner's assessment." Government Brief in Court of Appeals, p. 20.

The majority properly has refused to recognize any presumption of jurisdiction attaching to the Commissioner's assessment. I concur. Whatever presumption may arise upon the trial of a tax case that the Commissioner's determination of the amount of tax due is correct, United States v. Prince, 348 F.2d 746, 748 (2 Cir. 1965); United States v. Lease, 346 F.2d 696, 698–701 (2 Cir. 1965); Halle v. Com-

missioner, supra at 502, such presumption is irrelevant to the issue of jurisdiction; and moreover, in the context of the instant case, tax liability is not to be equated with, but is to be distinguished from, amenability to service of process.

### AGREED FACTS AND ISSUE IN DISPUTE

The facts as found by the district court, 235 F.Supp. 345, 346–348, may be briefly summarized. It is upon the basis of these facts, which are accepted by the majority, that the issue is presented whether Klein was engaged *through agents* in New York in 1944, 1945 and 1946 in transacting any business out of which the government's claim against Klein for income taxes arises. The majority holds that he was. Upon this issue, I dissent.

We are concerned with three Canadian companies of which Klein was managing director during the years in question: United Distillers Ltd. ("United") and its two subsidiaries, John Dunbar & Company, Ltd. ("Dunbar") and Duncan Harwood & Company, Ltd. ("Harwood"). United, whose stock was listed on certain Canadian exchanges and was actively traded, operated a distillery at Vancouver, B. C., where it produced whiskey which was distributed by its subsidiaries, Dunbar and Harwood, under their respective brand names. The corporate identities of United, Dunbar and Harwood were carefully preserved, specifically in their dealings with the other companies and individuals hereinafter mentioned.

Agencias Distilladores S.A. ("Agencias"), a Cuban corporation, was the "exclusive agent for the entire world" for the distribution of Dunbar and Harwood whiskey. There was no evidence of the stock ownership of Agencias. Klein's brother-in-law, H. H. Klein, a resident of Baltimore, Maryland, had some undetermined connection with Agencias.

R. C. Williams & Company, Inc. ("Williams"), a New York corporation, was engaged in the business of selling groceries, liquors and other products at wholesale. In April 1944, a contract was entered into between Agencias and Williams by which Agencias, the exclusive agent for distribution of Harwood whiskey, appointed Williams as its exclusive sub-agent for distribution of that whiskey in the United States. Pursuant to this contract, Williams imported substantial quantities of Harwood whiskey through Agencias and sold it during the years in question in various parts of the United States, including New York. Agencias made a profit of $11.00 per case on all Harwood whiskey sold under this contract, having purchased it at $8.05 per case from the distillery in Vancouver and having sold it to Williams at $19.05 per case. There was no evidence as to how Agencias distributed its profit. As a condition to Williams' obtaining appointment as exclusive subagent for Harwood whiskey in the United States under this contract, Klein insisted that Williams put on its payroll as salesmen various relatives and friends of Klein. Williams did so and paid them a "commission" of 60¢ per case of whiskey sold. Substantial amounts were paid as commissions, for which the recipients did little or nothing.

In 1944 and 1945, United sold Dunbar whiskey to Murray A. Schutz, doing business as Distillers Distributing Company, in San Francisco. Schutz paid Agencias for the whiskey. He shipped the whiskey to American military posts in the Far East and, beginning in August 1945, to American military posts in Europe. With respect to the whiskey shipped to Europe, Klein insisted, as reflected in an agreement of August 28, 1945 between Schutz and Klein's brother-in-law, Samuel Sager, of New York City, that Schutz give Sager two-thirds of Schutz' profits, which he did.

Upon these facts the majority holds that Klein was engaged in New York *through agents* in transacting business out of which the government's claim against Klein for income taxes in 1944, 1945 and 1946 arises. Specifically, it is the following two transactions which the majority holds confers jurisdiction upon the district court under § 302(a) (1):

(1) Klein's causing Williams to put on its payroll as salesmen various rela-

tives and friends of Klein who thereafter were paid a commission of 60¢ per case of Harwood whiskey sold, for which they did little or nothing; and (2) Klein's causing Schutz to enter into the agreement of August 28, 1945 with Klein's brother-in-law, Sager, pursuant to which Sager was paid two-thirds of Schutz' profits on Dunbar whiskey shipped to Europe.

It should be noted that in each instance it is activity, not by Klein acting in person, but *through his personal agents*—in the first instance, Williams as Klein's personal agent, and in the second instance, Schutz as his personal agent—which the majority holds constitutes the transacting of business within the state.

And the diversion of such funds by Klein's personal agents to Klein's relatives and friends being income to Klein under the attribution of income rule of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), there thus results, according to the majority, a cause of action by the government arising from Klein's transacting business within the state through his personal agents, Williams and Schutz.

Under well recognized principles of agency law, neither Williams nor Schutz were agents of Klein upon the facts as found by the district court and accepted by the majority. Absent any legal basis for holding that Klein transacted business in the state through agents and since concededly he did not transact business here in person, there is no ground for asserting personal jurisdiction over his executor pursuant to § 302. For these reasons, I dissent upon this issue.

APPLICABLE LAW IN DETERMINING
WHETHER BUSINESS IS TRANSACTED
THROUGH AN AGENT WITHIN THE
MEANING OF C.P.L.R. § 302(a) (1)

In construing and applying state long arm statutes, we look to state law. Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583 (2 Cir. 1965) (C.P.L.R. § 302(a) (1)); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 319 (2 Cir. 1964) (C.P.L.R. §§ 301 and 302(a) (1)); Arrowsmith v. United Press International, 320 F.2d 219, 231–234 (2 Cir. 1963) (en banc) (Vt.Stat.Ann. tit. 12, §§ 851–855); Brunette Sunapee Corp. v. Zeolux Corp., 228 F.Supp. 805, 806–807 (S.D.N.Y.1964) (C.P.L.R. § 302).

The New York courts, in construing C.P.L.R. § 302(a) (1), have held that "The test under CPLR 302(a) (1) is not whether there are sufficient contacts, but simply whether the defendant has transacted any business within the State, so long as the cause of action arises from any such transaction," Schneider v. J & C Carpet Co., 23 A.D.2d 103, 105, 258 N.Y.S.2d 717, 718 (1st Dept. 1965), and that while the phrase of C.P.L.R. § 302(a) (1) " 'transacts any business within the state' is much less restrictive than the 'doing business' concept of the present case law [citation omitted], it is indicated that the wrong must be connected with or flow from such business transacted in this State," Bryant v. Finnish Nat. Airline, 22 A.D.2d 16, 22, 253 N.Y.S.2d 215, 221 (1st Dept. 1964). In Schneider, the Appellate Division noted that Special Term had rested its decision on the ground that "plaintiff has shown that defendant had sufficient contacts to satisfy the minimum requirement indicating that it transacted at least some business within the state," and cautioned that this refers to the "doing business" test of C.P.L.R. § 301, not to the "business transacted" test of C.P.L.R. § 302.[6]

The majority's conclusion that Klein was transacting business within the state through agents results from a two step finding: (1) that "Klein's contacts with this state were thus not in-

---

6. Likewise in the instant case the majority throughout its opinion has referred to "Klein's *contacts* with New York," the "*substantiality of contacts* with this state," "*sufficient* minimum *contacts*," "*sufficient business*," and "*sufficient* *contacts*" (emphasis added). With deference, I must disagree with the majority's applying the "doing business" test of C.P.L.R. § 301 to the C.P.L.R. § 302(a) (1) problem here involved.

**252**

sulated by a fiduciary shield" and (2) that "activities conducted by Klein's personal agents constitute the transaction of business within the state."

*Klein's Conduct As Managing Director*

As for Klein's conduct as managing director of United, Harwood and Dunbar—assuming, as the district court did, that Klein "was the man in charge of these operations for those companies" and that "these operations amounted to the transaction of business in New York by United, Harwood and Dunbar"—the district court correctly held that "It is clear that the activities of Klein as a corporate officer on behalf of the corporations do not constitute the transaction of business by Klein individually." 235 F. Supp. 345, 348. This holding by the district court is squarely in accord with well settled New York law, including a recent decision that jurisdiction under C.P.L.R. § 302(a) (1) may not be obtained over an individual who acts in New York "solely in his capacity as general manager of the corporation, and not in his individual capacity." Boas & Associates v. Vernier, 22 A.D.2d 561, 563, 257 N.Y.S.2d 487, 490 (1st Dept. 1965). See Savoy Record Co. v. Cardinal Export Corp., 15 N.Y.2d 1, 254 N.Y.S.2d 521, 203 N.E.2d 206 (1964); Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961); Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953); Hall v. Lauderdale, 46 N.Y. 70, 74 (1871). In Boas & Associates, the

action was to recover commissions earned by a business broker and industrial consultant under a written agreement or under a subsequent oral agreement; the oral agreement with defendant was neither negotiated nor concluded in New York and defendant performed no act regarding the oral agreement in New York; the written agreement, negotiated and executed in New York by defendant as general manager of a French corporation, required defendant to pay plaintiff an agreed percentage of amounts received in transfer of a minority interest in the company to a person or business having a base, branch or affiliate in the United States; the court held unanimously that, despite the fact that the prior written agreement was historically necessary to the inception of the subsequent oral agreement, the alleged causes of action did not arise from any act of defendant transacting business within the state in his individual capacity, as distinguished from his capacity as general manager of the French corporation, and therefore the court did not have personal jurisdiction over defendant under C.P.L.R. § 302(a) (1).

In the instant case, the only corporations for which Klein was acting as a corporate officer were United, Harwood and Dunbar. There is not a scintilla of evidence that Klein was in any way connected with Agencias—either as director, officer or stockholder.[7] When the ma-

---

7. The majority correctly does not rely upon any relationship between Agencias and Klein in finding that the latter was transacting business in New York. Despite unsupported claims by the government in this regard, the record is completely barren of any such relationship.

The district court, in its May 1, 1964 opinion, in posing the question to be determined at the subsequent evidentiary hearing, said, "The issue is whether certain corporations in which Klein was a stockholder transacted business in New York in 1944, 1945 and 1946 and if so, whether those corporations were sham, so that their existence may properly be disregarded." 35 F.R.D. 216, 222. After a full evidentiary hearing, the district court found, with reference to the cor-

porations in which the government *claimed* Klein was a stockholder, that "no direct evidence of their stock ownership was introduced"; that "the record is wholly silent as to who owned the stock of Agencias"; and that "The affidavits originally submitted by plaintiff on this motion led me to suppose that plaintiff proposed to show that Agencias was merely a sham corporation. No such showing has been made or even attempted. We are left wholly in the dark as to who the stockholders of Agencias were * * *." 235 F.Supp. 345, 346, 347, 348.

This conclusion by the district court in the instant case is consistent with the 1955 holding by Judge Sugarman, in a criminal action for income tax evasion

jority says that "Klein could not have been acting in his role as a corporate officer" and that "Klein's contacts with this state were thus not insulated by a fiduciary shield," it obviously is referring to Klein's role as a corporate officer of United, Harwood and Dunbar and the insulation of his fiduciary shield in that role. And yet the very distribution contracts pursuant to which Klein insisted that payments be made to his relatives and friends were contracts between *Agencias* (the "exclusive agent for the entire world") and (a) *Williams* and (b) *Schutz*. Neither United, Harwood nor Dunbar were parties to the contracts which the majority holds removes the shield from Klein in his capacity as their managing director. The district court correctly found that "The evidence does not support plaintiff's claim that the acts of [Harwood] and of [Dunbar] were the personal acts of Klein. Nor is there any showing that these companies were agents of Klein individually." 235 F.Supp. 345, 348.

Moreover, upon the majority's theory that Klein breached his fiduciary duty in diverting funds to his relatives and friends, it follows that the corporations whose funds he misappropriated could have proceeded against him for an accounting. Everett v. Phillips, 288 N.Y. 227, 43 N.E.2d 18 (1942); Gilbert v. Finch, 173 N.Y. 455, 66 N.E. 133, 61 L.R.A. 807 (1903); Bosworth v. Allen, 168 N.Y. 157, 61 N.E. 163, 55 L.R.A. 751 (1901); McClure v. Law, 161 N.Y. 78, 55 N.E. 388 (1899); Winter v. Anderson, 242 App.Div. 430, 275 N.Y.S. 373

(4th Dept. 1934); Nechis v. Gramatan Gardens, Inc., 35 Misc.2d 949, 231 N.Y.S. 2d 383, 385 (Sup.Ct., 1962); N.Y. General Corporation Law, § 60 (McKinney 1943). The rationale of such an accounting is that Klein, having acted within the scope of his powers as a corporate officer in misappropriating corporate funds, could not immunize himself from liability to account. McClure v. Law, supra at 81. Since a corporate officer who abuses his powers in diverting corporate funds is held by the law to have acted within the scope of his office for the purpose of accounting and making restitution, it is incongruous, for the purpose of asserting jurisdiction in a government tax suit, to hold that the same act of diverting corporate funds is beyond the scope of his office. Such a holding reflects the irony which the majority deplores.

Upon the entire record before us, including the facts as found by the district court and accepted by the majority, it is abundantly clear that there is no basis in law for "piercing the corporate veil" or "removing the corporate shield" with respect to the only corporate role shown by the evidence to have been undertaken by Klein, namely, as managing director of United, Harwood and Dunbar. This Court has never lightly brushed aside corporate identities which are carefully preserved, but traditionally has respected and enforced the rights and duties resulting from corporate organization. Rashap v. Brownell, 250 F.2d 794, 795 (2 Cir. 1957); Rashap v. Brownell, 229 F.2d 193, 195 (2 Cir. 1956); Sun-Herald

---

against Klein's brother-in-law (H. H. Klein) and other stockholders of these corporations, that the corporations were not sham. The government in the instant case conceded that the business activities involved in the 1955 criminal case included "the identical issues which are the basis for the Government's assessment in this action." Government Brief in Court of Appeals, p. 7. After a thorough examination of the "extensive and involved transactions disclosed to a jury in a trial of almost five months duration," United States v. Klein, 247 F.2d 908, 911 (2 Cir. 1957), cert. de-

nied, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed. 2d 354 (1958), Judge Sugarman at the close of the government's case dismissed several counts of the indictment and held that " * * * the seventeen corporations were acceptable entities for tax purposes and not a sham * * * Their income was theirs and not that of Klein and his three Canadian associates." United States v. Klein, 139 F. Supp. 135, 140 (S.D.N.Y.1955), conviction on conspiracy count aff'd, 247 F. 2d 908 (2 Cir. 1957), cert. denied, 355 U. S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958).

254

Corp. v. Duggan, 160 F.2d 475, 478 (2 Cir. 1947). See Fletcher, Private Corporations § 41, at 166–168 (perm. ed. rev. repl. 1963). In Duggan, supra at 478, Judge Learned Hand said:

> "The law of corporations allows the fabrication of such elaborately involuted jural persons, as Munsey seems to have thought important in his affairs; and out of them authentic rights and duties will emerge. Although there are occasions when courts will brush them aside, and decide controversies as though only the human actors had been concerned, when there is no such occasion, the rights and duties that result must be respected and enforced like any others. * * * It is idle to ask us to look 'realistically' at what they did; that is a word always indicating either an inability to discover, or an unwillingness to tell, the detemining factors; we study always to eschew it."

And it may be well to heed the admonition of Judge Cardozo who cautioned against loose application of the concept of ignoring the corporate entity in Berkey v. Third Avenue Railway Co., 244 N.Y. 84, 94–95, 155 N.E. 58, 61, 50 A.L.R. 599 (1926):

> "Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an 'alias' or a 'dummy.' All this is well enough if the picturesqueness of the epithets does not lead us to forget that the essential term to be defined is the act of operation. Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less

8. The Restatement of Agency has long been accepted and cited with approval by the New York courts, e. g. Maryland Casualty Trust Co. v. Central Trust Co.,

than this, we are remitted to the tests of honesty and justice."

*Activities Conducted by Williams and Schutz—Were They Klein's Personal Agents?*

The majority first concludes that "Williams and Schutz were the contractual agents of the corporations Klein managed" but, it continues, "the government has *charged* that they were also his personal agents in a scheme to divert funds to Klein's designees." (Emphasis added.)

Basic to the majority's holding from which I dissent is that there was a principal-agent relationship between Klein and Williams and between Klein and Schutz. To my eye, nothing could be clearer than the absence of any such relationship—on the law and on the facts.

The elements of a principal-agent relationship are set forth in the Restatement (Second), Agency § 1 (1958),[8] as follows:

> "(1) Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.
>
> (2) The one for whom action is to be taken is the principal.
>
> (3) The one who is to act is the agent."

And the element of *control* as a sine qua non to a principal-agent relationship is emphasized in Restatement (Second), Agency § 1, comment *b* (1958):

> "Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and *the understanding of the parties that the principal is to be in control of the undertaking.*

297 N.Y. 294, 301, 79 N.E.2d 253, 256 (1948) (Restatement, Agency § 14 (1933)).

\* \* \* \* \* \*

"The agency relation results if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts. *It is the element of continuous subjection to the will of the principal which distinquishes the agent from other fiduciaries and the agency agreement from other agreements."* (Emphasis added.)

Further on the element of *control* by the principal, Restatement (Second), Agency § 14 (1958) provides:

"A principal has the right to control the conduct of the agent with respect to matters entrusted to him."

And the absence of *control* by the principal strips the relationship of any agency character, as explained in Restatement (Second), Agency § 14, comment *b* (1958):

"If the existence of an agency relation is not otherwise clearly shown \* \* \* *the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relation is not that of agency."* (Emphasis added.)

The law therefore is clear that, in analyzing the relationship between Klein and Williams and between Klein and Schutz, unless Williams and Schutz were subject to Klein's control—unless there was a continuous subjection of Williams and Schutz to the will of Klein—unless there was an understanding that Klein was to be in control of the undertaking— unless it was understood that Williams and Schutz were to be subject to the control of Klein as to the manner of their performance of their respective contracts —then the relationship was not that of agency. Upon the record before us, I fail to see any basis whatsoever seriously to claim that Klein exercised over either Williams or Schutz, with their consent, that degree of control required by the law to establish a principal-agent relationship; certainly the record is totally devoid of the "clear and explicit evidence" of an intention to "superadd" the responsibility of the agent to that of his principal required by the New York courts. Savoy Record Co. v. Cardinal Export Corp., 15 N.Y.2d 1, 4, 254 N.Y.S.2d 521, 523, 203 N.E.2d 206, 207 (1964); Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (1961); Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953); Hall v. Lauderdale, 46 N.Y. 70, 74 (1871). In Salzman, supra at 67, Chief Judge Desmond, referring to Hall v. Lauderdale, supra, observed that "The *Hall* opinion shows that the requirement of 'clear and explicit evidence' of individual-liability intent is nearly a century old in this State."

As to the "transaction" by which Klein caused Williams to put on its payroll various relatives and friends of Klein, the evidence shows, through the testimony of the government's witness Koerner, that during the years in question, "It was a common practice by all distilleries to supervise the appointment of distributors in all territories of the United States"; that various salesmen and brokers were appointed by Williams at the suggestion of *H. H.* Klein, of Albert Roer, of Koerner himself and of *I. J.* Klein, acting "as representative of Duncan Harwood, UDL, whichever company we were doing business with"; and that "We [Williams] were the agents of Harwood and not Mr. Klein in the United States." Such sharing by Klein with at least three others of the privilege of suggesting, or even designating, salesmen or brokers for appointment by Williams is a far cry from the standard of *control* of Williams' undertaking necessary to constitute Williams as Klein's agent.

As to the "transaction" by which Klein caused Schutz to pay Klein's brother-in-law, Sager, two-thirds of Schutz' profits

on Dunbar whiskey shipped to Europe after August 1945, there is no evidence at all of the amount of such payments or their duration. Klein's sole contact with the contract of August 28, 1945 which resulted in such payments was limited to a visit from Schutz to Klein in Vancouver, B. C.; thereafter the contract was negotiated and executed in New York as a result of contacts there between the contracting parties, Schutz and Sager, and the latter's lawyer, Morris Alprin—Klein himself at no time having set foot in New York. Such whiskey as was shipped to Europe under the contract went from United's distillery in Vancouver via the free port on Staten Island. Our recent decision in Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583 (2 Cir. 1965), in its analysis of the requirements for assertion of personal jurisdiction under C.P.L.R. § 302(a) (1) over non-domiciliaries (as distinguished from its analysis of § 301 jurisdiction) renders the instant case a fortiori one of no personal jurisdiction over the non-domiciliary Klein; for here the non-domiciliary whose "transaction" is being scrutinized was at no time in New York in connection with the contract under consideration. To infer, as the majority does, that Schutz was Klein's agent in making payments to Sager pursuant to a contract which in turn the majority infers was negotiated and executed by Schutz as Klein's agent, is to indulge in the forbidden pyramiding of inferences.

In short, applying the controlling principles of the law of agency to the facts disclosed by this record, there simply is no basis upon which to find any of the essential elements of a principal-agent relationship between Klein and Williams or between Klein and Schutz; and least of all is there a scintilla of the requisite element of control by Klein over either. Upon such facts and in the teeth of such unmistakably clear substantive law of the State of New York, it seems to me that we are wholly without warrant in holding that Klein was engaged in the state through agents in transacting any business out of which the alleged cause of action arises and we therefore are without warrant in directing the district court to assert personal jurisdiction pursuant to § 302 over Montreal Trust.

### SUMMARY OF DISSENT

My esteem for my colleagues on the majority is so profound that I cannot bring myself to believe that they actually think there was a principal-agent relationship between either Klein and Williams or Klein and Schutz—a proposition for which no authority is cited.

The conclusion reached by the majority, it seems to me, has emerged from a combination of errors:

(1) They have confused the "doing business" test of C.P.L.R. § 301 with the "transacts any business" test of C.P.L.R. § 302(a) (1), supra note 6. This has resulted in a search for "sufficient minimum contacts," to use the majority's own words, rather than a determination of whether Klein "transact[ed] any business within the state," to use the statutory language. This distinction is vital to a correct analysis of the relationships between Klein and Williams and Klein and Schutz and the "transactions" relied upon by the majority.

(2) Although ostensibly accepting "the facts as found by the District Judge," they have actually relied upon the "allegations" of the government and what "the government has charged," supra note 2, despite the district court's explicit finding that such allegations and charges were not supported by competent proof. Thus, the majority has disregarded the command of Rule 52(a) that findings of fact are not to be set aside unless clearly erroneous.

(3) This in turn has led to a holding by the majority that when the government's assertion of jurisdiction was challenged under § 302, it "was required to establish only prima facie tax-related transactions of Klein in New York" and that the district court "placed a too heavy burden on the government in requiring it to establish a strong factual basis upon which jurisdiction is predicated." This holding, in my view, is

at war with the rule of McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), supra note 2, uniformly followed for thirty years by the federal courts, including our own, in placing squarely upon the party asserting federal jurisdiction the burden of proving the essential facts by a preponderance of the evidence and, in default of which, requiring dismissal for lack of jurisdiction.

(4) While the majority has expressly disclaimed passing on the merits of the government's claim for taxes, it has acknowledged that "under the familiar attribution of income rules of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75 (1940)" the government contends that funds earned by Williams and Schutz and paid as commissions to Klein's relatives and friends may have been income of Klein for tax purposes. The majority, seemingly unconsciously, has fallen for the government's bait of "a somewhat more sophisticated view of the facts of economic life" and has equated potential tax liability with amenability to service of process. But even if, as the government claims, Klein may have incurred substantive tax liability on a theory of constructive receipt or individual enjoyment of income, it does not follow that by virtue thereof he transacted any business, in the sense of engaging in some purposeful activity, within the state, as required by § 302. The distinction is a fine one, but it is vital to a constitutional assertion of personal jurisdiction over a non-domiciliary in a federal tax case.

For these reasons I am constrained to conclude that the majority's direction to the district court to assert personal jurisdiction pursuant to § 302 over Montreal Trust violates the due process requirements of the United States Constitution, U. S. Const. amend. V (due process clause), and renders § 302 unconstitutional as applied. Hanson v. Denckla, 357 U.S. 235, 251, 253, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958); Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 317–319, 66 S.Ct. 154, 90 L.Ed. 95 (1945); cf. Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583, 586–590 (2 Cir. 1965), and concurring opinion of Chief Judge Lumbard, id. at 590; Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 319–323 (2 Cir. 1964); Arrowsmith v. United Press International, 320 F.2d 219, 233–234 (2 Cir. 1963) (en banc); Deveny v. Rheem Manufacturing Co., 319 F.2d 124, 126–128 (2 Cir. 1963); Blount v. Peerless Chemicals (P. R.) Inc., 316 F.2d 695, 696–701 (2 Cir. 1963), cert. denied, Colbert v. Peerless Chemicals, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963); Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508, 516–522 (2 Cir. 1960) (concurring opinion of Judge Friendly); MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832, 834–835 (2 Cir. 1958); Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 554–558 (4 Cir. 1965); Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147, 152–155 (5 Cir. 1954); First Flight Company v. National Carloading Corp., 209 F.Supp. 730, 736–740 (E.D.Tenn. 1962); Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 781–784 (E.D.Pa.1961); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 451–452, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68, 72 (1965); Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). The power of a federal court to subject a non-domiciliary to its jurisdiction in a federal question case under the due process clause of the Fifth Amendment is measured by the same standards as the power of a state court to assert personal jurisdiction over a non-domiciliary under the due process clause of the Fourteenth Amendment, U. S. Const. amend. XIV (due process clause).

With the utmost deference to the majority, I think it is both unnecessary and unfortunate that this case has emerged as a vehicle for application of the New York long arm statute under circumstances of such doubtful validity.

It is unnecessary because, while this is an appeal from an interlocutory order pursuant to 28 U.S.C. § 1292(b) restricted to the jurisdictional issue and we do not pass on the merits of the government's claim for taxes, we would be blinding ourselves if we failed to note the extreme remoteness of any likelihood that the government will ever collect the taxes sought in this suit. Aside from what appears to be conclusive authority of the Supreme Court of Canada that the courts of that country would refuse to enforce any judgment against Montreal Trust in this case, United States v. Harden, [1964] D.L.R.2d 721, [1963] Can. Exch. 336 (63–2 U.S.T.C. ¶ 9768), the issues of substantive tax liability here involved— which the government concedes are identical with those involved in the 1955 criminal case before Judge Sugarman, supra note 7—were there tried and found wanting by a careful and patient judge. United States v. Klein, 139 F. Supp. 135, 140 (S.D.N.Y.1955), conviction on conspiracy count aff'd, 247 F.2d 908 (2 Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). Before us, the government has characterized the views of the district court in the instant case on the theory of taxable income as "antediluvian." Government Brief In Court of Appeals, p. 21. The only thing antediluvian about this case, in my view, is the case itself. Granted that mine is not the "sophisticated view of the facts of economic life" pressed upon us by the government, ibid., the government's case—based on tax liabilities claimed to have arisen 20 years ago, assessed in absentia 11 years ago against a foreign non-domiciliary who died 10 years ago and grounded upon theories of tax liability tried and found wanting by a distinguished and experienced federal trial judge more than a decade ago—has all the pungent attributes, to anyone of ordinary sensory perception, of a dead horse being kicked around. I think it is particularly regrettable that the government—the major litigant in the federal courts—has chosen this case to invoke jurisdiction of such questionable validity.

The decision by the majority today, in stretching the reach of the New York long arm statute on the basis of the slender reed of a principal-agent relationship so tenuous as to be non-existent, in my opinion, is unfortunate because it surely will come back to plague us and, until corrected, will be most unsettling to the bar and to the district courts in an area where we have recognized that certainty and predictability, based on reasonably clear-cut rules, is desirable. In rejecting a claim that assertion of in personam jurisdiction should not turn on nice or technical questions of title or property under commercial law, we recently said, "On the contrary, we feel that in cases arising out of contractual relationships, the rules governing amenability to suit should be reasonably clear-cut, so that the parties may predict with some certainty the jurisdictional consequences of their conduct." Agrashell, Inc. v. Bernard Sirotta Company, supra at 589. And, referring to the same commendable objective, "here is a field in which as much certainty and predictability as possible is to be desired." MacInnes v. Fontainebleau Hotel Corp., supra at 833. Moreover, the state courts, including the New York Court of Appeals, appropriately sensitive that their long arm statutes should not be interpreted so broadly as to conflict with the United States Constitution, look to the federal courts to define "the constitutional area for state exercise of jurisdiction over nonresidents" which has been left largely undefined by International Shoe Co. v. Washington, supra, and its progeny.[9] And the role of

9. See concurring opinion of Judge Van Voorhis in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 468, 261 N.Y.S.2d 8, 27, 209 N.E.2d 68, 82 (1965):

"In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228 [2 L.Ed.2d 1283], the Supreme Court indicated that all United States constitutional restrictions on the personal jurisdiction of state courts have not been

our own Court through the years has been a notable one in furnishing, not only for the district courts and the state courts, but for the Supreme Court of the United States, intelligent, carefully formulated and far-sighted guidelines for the assertion of personal jurisdiction within constitutional dimensions. Thus, for example, Judge Learned Hand's "estimate of the inconveniences" test, first formulated in Hutchinson v. Chase & Gilbert, 45 F.2d 139, 141 (2 Cir. 1930), emerged 15 years later as the cornerstone of the Supreme Court's landmark decision in International Shoe Co. v. Washington, supra at 317. And see Arrowsmith v. United Press International, supra at 229.

I regret that my colleagues on the majority, whom I hold in the highest esteem, by today's decision are departing from the historic role of our Court in not furnishing the sound guidance, based on the unmistakably clear state substantive law here controlling, so sorely needed in defining the proper scope of constitutional assertion of personal jurisdiction over a non-domiciliary in a federal tax case. The issue is one of first impression. It is vital to the sound administration of the revenue laws of the United States. And its radiations, for good or bad, will surely permeate interpretations by other courts of state long arm statutes throughout the land. I wish I could believe its radiations were good.

While I concur with the majority upon those issues specified above, supra pp. 246–250, I dissent from its holding that

Klein was engaged in New York *through agents* in transacting any business out of which the alleged cause of action arises and I am of the opinion that the majority's direction to the district court to assert personal jurisdiction pursuant to § 302 over Montreal Trust violates the due process requirements of the United States Constitution and renders § 302 unconstitutional, as applied.

I would affirm the district court on all issues and on the excellent opinions below.

removed. *Each state is likely to go as far as the Constitution permits in assuming jurisdiction over nonresidents, and it is appropriate that they should be restrained in doing so by some modern Federal rule of constitutional interpretation analogous to but in substitution for that of* Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. *That time-honored decision held the balance between the states for a long time. It has now been superseded by* International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 [90 L.Ed. 95] and McGee v. International Life Ins. Co., 355 U.S. 220, 78

S.Ct. 199 [2 L.Ed.2d 223], *but, as pointed out in Judge Fuld's opinion, those cases still have left largely undefined the constitutional area for state exercise of jurisdiction over nonresidents. It is desirable that this constitutional area become defined, as it probably will be by individual cases in course of time. I am fortified in my view that the court is correct in its interpretation of CPLR 302 in* Feathers v. McLucas *by the circumstance that a broader interpretation would be likely to conflict with the Federal Constitution."* (Emphasis added.)