**UNITED STATES of America,**
**Plaintiff,**

v.

**The MONTREAL TRUST COMPANY and Tillie V. Lechtzier, Executors of the Estate of Isidor J. Klein, Deceased, Defendants.**

United States District Court
S. D. New York.
Oct. 20, 1964.

Robert M. Morgenthau, U. S. Atty., S. D. N. Y., for the United States.

Shearman & Sterling, New York City, for Montreal Trust Co.

McLEAN, District Judge.

This is an action by the United States against the executors of Isidor J. Klein, a citizen and resident of Canada, who died on June 14, 1955, to recover United States income taxes, together with penalties and interest, allegedly owed by Klein for the years 1944, 1945 and 1946. The summons was served upon the executors in Canada, purportedly pursuant to New York CPLR §§ 302 and 313. Defendant Montreal Trust Company moved to set aside the service and to dismiss the action. The questions of law raised by this motion are discussed in my opinion dated May 1, 1964. D.C., 35 F.R.D. 216. For the reasons there set forth, I held that the service was valid provided that Klein in the years in question transacted business within the State of New York. A hearing has been held to determine that question of fact. Evidence introduced at that hearing may be summarized as follows: [1]

In 1944, 1945 and 1946, Klein was managing director of United Distillers Ltd. ("United"), a Canadian company, which operated a distillery at Vancouver, B. C. The stock of that company was listed on the Vancouver Stock Exchange and the Montreal Curb Exchange and was actively traded by the public. United distilled Canadian whiskies bearing various brand names, among which were Dunbar and Harwood.

---

[1] I shall consider only the evidence adduced at the hearing and shall disregard the allegations of the affidavits originally submitted in support of and in opposition to the motion. These allegations are made by attorneys, who obviously have no personal knowledge of the facts. It was because of the inadequacy of the affidavits in this respect that I directed that a hearing be held.

At some point, precisely when does not appear, separate Canadian companies were formed named John Dunbar & Company, Ltd. ("Dunbar"), and Duncan Harwood & Company, Ltd. ("Harwood"). Although no direct evidence of their stock ownership was introduced, it can reasonably be inferred that these companies were subsidiaries of United. Their Canadian tax returns referred to United as their "parent" company. Certain Canadian filing fees were paid for them by United. They had the same address as United. Klein signed correspondence as managing director of Harwood. Presumably he was also managing director of Dunbar.

Klein took some care to preserve the separate corporate identities of these companies. Thus, in one letter he pointed out that correspondence relating to Harwood whiskey should be addressed, not to United, but to Harwood. These instructions were generally followed by his American correspondents. The invoices for Harwood whiskey distilled by United were signed "United Distillers Ltd. for Duncan Harwood & Co. Ltd." Invoices for Dunbar whiskey distilled by United were signed "United Distillers Ltd. for John Dunbar & Co. Ltd." Apparently for some reason of its own, United chose to manufacture Harwood whiskey for the account of Harwood and Dunbar whiskey for the account of Dunbar. These internal arrangements were of no concern to the American companies with which United dealt. They regarded United, Harwood and Dunbar as all one corporate enterprise.[2]

The "exclusive agent for the entire world" for the distribution of Harwood and Dunbar whiskies was a Cuban corporation known as Agencias Distilladores S.A. ("Agencias"). Klein's brother-in-law, H. H. Klein, who lived in Baltimore, Maryland, had some connection with this company, the exact nature of which was never made clear. Moreover, the record is wholly silent as to who owned the stock of Agencias.

In April 1944 a contract was entered into between Agencias and R. C. Williams & Company, Inc. ("Williams"), a New York corporation engaged in the business of selling at wholesale groceries, liquors and various other products. By this contract Agencias, representing that it was the exclusive agent of Duncan Harwood & Co. Ltd. in the distribution of Harwood whiskey, appointed Williams exclusive subagent for the distribution of that whiskey in the United States. Pursuant to this contract, Williams thereafter imported substantial quantities of Harwood whiskey and sold it in various parts of the United States, including the State of New York, during the years 1944, 1945 and 1946. Williams paid Agencias $19.05 per case. The invoices show that "United Distillers Ltd. for Duncan Harwood & Co. Ltd." in Vancouver, B. C. received $8.05 per case. The difference, i. e., $11.00 per case, presumably was retained by Agencias. There is no evidence as to what Agencias did with it.

As to Dunbar whiskey, the evidence shows that in 1944 and 1945 "United Distillers Ltd. for John Dunbar & Co. Ltd." sold Dunbar whiskey to Murray A. Schutz, doing business as Distillers Distributing Company in San Francisco. He sold the whiskey to American military posts in the Far East. Beginning in August 1945 Dunbar whiskey was shipped from United's distillery in Vancouver to Schutz in New York, in bond, and was re-exported by Schutz to American

2. Plaintiff introduced in evidence Canadian tax returns of Harwood and Dunbar for 1944, 1945 and 1946, which recited that no tax was payable because there had been "no operations since inception of the company." Why such returns were filed was never explained. They are, of course, inconsistent with the other evidence which tends to show that Harwood and Dunbar in fact did engage in business. Whether United paid the Canadian income tax for all three companies or whether, if it did not, it attempted to perpetrate a fraud upon the Canadian tax authorities, is a question which cannot be determined on this record and in any event is a matter which seems to have no relevance to the issue here.

army posts in Europe. Schutz paid Agencias for the whiskey.

■ The evidence shows that Klein, in his capacity as managing director of United, Harwood and Dunbar, was the man in charge of these operations for those companies. It may be assumed for the sake of argument that these operations amounted to the transaction of business in New York by United, Harwood and Dunbar. But plaintiff's claim for income taxes is against Klein individually, not against the corporations, and unless Klein himself transacted business in New York in the years in question, either in person or through an agent, and derived income therefrom, there is no statutory basis under CPLR § 302 for the extra-territorial service upon Klein's executor. It is clear that the activities of Klein as a corporate officer on behalf of the corporations do not constitute the transaction of business by Klein individually. The evidence does not support plaintiff's claim that the acts of Duncan Harwood & Co. Ltd. and of John Dunbar & Co. Ltd. were the personal acts of Klein. Nor is there any showing that these companies were agents of Klein individually. The evidence must show more than activity of Klein as a corporate officer if the service upon his executor is to be sustained.

Plaintiff claims that the evidence does show more. First, it points to the fact that Klein was in New York at various times in 1943, 1944 and 1945, as evidenced by the records of the Hotel Waldorf-Astoria. Some of his hotel bills were charged to United, others were paid in cash. It seems probable that Klein was here on corporate business. In any event, there is no evidence to the contrary. There is nothing to show that he was engaged here in business of his own. Obviously, the mere fact that a man spends a few days in a New York hotel does not, in and of itself, amount to such a transaction of business in New York as to subject him to service outside the state.

In the second place, plaintiff points to two instances of somewhat unorthodox behavior on Klein's part. Before he would agree to sell Dunbar whiskey to Schutz for export to Europe, he insisted that Schutz agree to give two-thirds of Schutz's profits to Samuel Sager of New York City, Klein's brother-in-law. Schutz agreed to this in a formal contract with Sager dated August 28, 1945, and proceeded to carry out the contract. Moreover, Klein insisted that Williams, in order to obtain its lucrative appointment as subagent in the United States for Harwood whiskey, must agree to put on its payroll as salesmen various relatives and friends of Klein. Williams did so, and paid them a "commission" of 60¢ per case of whiskey sold. The total amounts so paid were substantial, and the recipients did little or nothing to earn them.

■ Plaintiff asks the court to infer that these people paid all or part of their income to Klein. There is no evidence whatever that they did. Whether they did or not is a matter of pure speculation. All that plaintiff has proved is that Klein used his position as managing director of the distillery, at a time when whiskey was in short supply and in great demand, to force American importers to share their profits with Klein's relatives and friends. Reprehensible as this conduct may be, it does not, in my opinion, constitute the transaction of business by Klein in New York.

Thirdly, plaintiff points to the spread of $11.00 per case between the price of the whiskey f.o.b. Vancouver received by the distillery and the price paid by the importer to Agencias. But this has no significance in the absence of any evidence that Klein personally benefitted from it. The affidavits originally submitted by plaintiff on this motion led me to suppose that plaintiff proposed to show that Agencias was merely a sham corporation. No such showing has been made or even attempted. We are left wholly in the dark as to who the stockholders of Agencias were and as to who participated in the large profit which it would appear to have made in these transactions.

I conclude that there is no evidence from which I could properly find that Klein, as an individual, in 1944, 1945 and 1946, transacted business in New York and derived income therefrom. United States v. Bruswitz, 219 F.2d 59 (2d Cir. 1955), cert. denied, 349 U.S. 913, 75 S.Ct. 600, 99 L.Ed. 1247 (1955), relied upon by plaintiff, was a criminal case involving the taxability of bribes admittedly received by defendants. It is not in point here.

Plaintiff's final contention is that even though there is no such evidence, such a finding can be based upon the mere fact that the Internal Revenue Service assessed income taxes against Klein for those years. No pertinent authority is cited for this proposition and in my opinion it is without merit. Upon the trial of an income tax claim, on the merits, it has been held that the Commissioner's determination of the amount of tax due is presumptively correct. Halle v. Commissioner of Internal Revenue, 175 F.2d 500 (2d Cir. 1949), cert. denied, 338 U.S. 949, 70 S.Ct. 485, 94 L.Ed. 586 (1950). But it by no means follows that the Commissioner's assessment is prima facie evidence of such a state of facts as would sustain the validity of an extra-territorial service of summons. If plaintiff's contention were sound, no hearing on the question of fact would ever be necessary, and all that the government would need to do to sustain the service, at least in the first instance, would be to produce a certified copy of the tax assessment. I am unwilling thus to extend the presumption referred to in the Halle case and similar cases.

Since it does not appear that plaintiff's claim arose from the transaction of any business by Klein within the State of New York, the purported service of summons upon defendant Montreal Trust Company as Klein's executor in Vancouver, Canada, cannot be sustained under New York CPLR § 302 and must therefore be set aside. Defendant's motion is granted to that extent.

The only question which has been tried out upon this motion is the validity of this particular purported service. Therefore, the court's decision will be limited to that question, and in so far as the defendant seeks a final dismissal of the entire action, the motion is denied.

So ordered.