**SCHERING TRANSAMERICA CORPORATION, Plaintiff,**

v.

**Wallace TORRES–CANET, Defendant,**

v.

**SUTTON COSMETICS et al., Third-Party Defendants.**

**Civ. No. 542–66.**

United States District Court
D. Puerto Rico.
Sept. 30, 1968.

**364**

McConnell, Valdes, Kelley & Sifre, San Juan, P. R., for plaintiff.

Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., for defendant.

Brown, Newson & Cordova, San Juan, P. R., for third-party defendants.

## MEMORANDUM OPINION AND ORDER

FERNANDEZ-BADILLO, District Judge.

This cause came to be heard upon the motion of the third-party defendants for dismissal of the third-party complaint or in lieu thereof to quash the returns of services of summons on the grounds that this Court has no jurisdiction so as to subject the third-party defendants to service of process within the District of Puerto Rico.[1]

Plaintiff filed this action against defendant seeking judgment for goods sold and delivered to the defendant and allegedly not paid for. Plaintiff also seeks a declaratory judgment that it could terminate all relationship with defendant as a distributor of its cosmetics products for just cause.

In its answer defendant denied liability and counterclaimed seeking damages from the plaintiff for the plaintiff's alleged violation of Law No. 75 approved by the Legislature of Puerto Rico, on June 24, 1964, as amended, 10 L.P.R.A. §§ 278–278d.

Some six months later plaintiff brought a third-party complaint against Sutton Cosmetics, Inc., Michael D. Goldsmith and Henry Worth alleging that insofar as the defendant may recover money from the plaintiff for the plaintiff's cancellation of defendant's distributorship, plaintiff should in that event be indemnified by the third-party defendants. Plaintiff's claim of a right to indemnification by the third-party defendants is founded on a contract and two letter-agreements.

Before December of 1964, Sutton Cosmetics, Inc. was engaged in the cosmetics business, selling its products primarily in the United States and also in various other parts of the world. A small fraction of its sales were made to persons in the Commonwealth of Puerto Rico. Sutton was a New York corporation and had its only office in New York City.

On December 24, 1964, Sutton executed an agreement in which it sold all of its assets to White Laboratories, Inc. This agreement was negotiated in its entirety in New York and New Jersey. Sutton's sole assets were located in New York and New Jersey and all were transferred in New York and New Jersey. Paragraph 9 of the agreement said that it would be governed "by the laws of the State of New York."

In the agreement, Sutton represented to White Laboratories, Inc. that it had no distributorship agreements (with certain exceptions) which could not be cancelled upon thirty (30) days' notice by Sutton. Among those persons listed as not having a distributorship agreement that could not be so cancelled was defendant Torres-Canet.

In separate letters executed in New York, Worth and Goldsmith endorsed all the representations made by Sutton to White Laboratories, Inc.

Since January 15, 1965, Sutton has engaged in no business whatsoever in the Commonwealth of Puerto Rico or with citizens or residents of Puerto Rico. Indeed, except for winding up its affairs, it did no business from the aforesaid date until it became absolutely defunct in December of 1965.

---

1. As the third-party defendants accompanied their motion to dismiss with an affidavit it will be treated as a motion for summary judgment under Rule 56 F.R.Civ.P.

For their part, neither Worth nor Goldsmith ever did any business for their personal accounts in Puerto Rico. Neither Sutton, Goldsmith nor Worth ever had an office in Puerto Rico.

Plaintiff Schering claims to be the successor to White Laboratories, Inc. under the Sutton Agreement. It appears from the pleadings that, by its own choice, Schering did business with defendant Torres-Canet after January 15, 1965, for a year and one-half. Sutton, Worth and Goldsmith never participated as parties in any business arrangements involving Schering and Torres-Canet.

Service of process was attempted to be made upon the three third party defendants by service upon the Secretary of State of the Commonwealth of Puerto Rico under Rule 4.7 of the Rules of Civil Procedure of Puerto Rico and under Title 14 Section 2207 of the Laws of Puerto Rico Annotated.

Affidavits were submitted and depositions were taken. Upon consideration of the pleadings and documents on file this Court finds that there exists no genuine issue of fact relative to jurisdiction over the third-party defendants and Court makes the following:

## FINDINGS OF FACT

1. The contract which is the alleged basis of the third-party complaint was made in the State of New York between New York domiciliaries and a New Jersey corporation and no portion of said contract or the negotiations in connection therewith took place in the Commonwealth of Puerto Rico.

2. The subject matter of the said contract was located wholly in New York and the assets and properties covered thereby were situated in New York and no part thereof was ever in the Commonwealth of Puerto Rico.

3. No part of the said contract was to be performed by any of the parties thereto in the Commonwealth of Puerto Rico.

4. None of the said third-party defendants made any contracts or committed any torts within the Commonwealth of Puerto Rico which would give rise to the cause of action purported to be alleged in the third-party complaint.

5. None of the third-party defendants owned any property, possessed assets, employed employees, maintained offices, or had bank accounts in the Commonwealth of Puerto Rico.

6. The corporate third-party defendant Sutton Cosmetics, Inc. having been legally dissolved in 1965 could not have had any dealings in the District of Puerto Rico at a time proximate to the commencement of this action and so could not be a person who at the time of the commencement of the action was carrying out business transactions within Puerto Rico.

## CONCLUSIONS OF LAW

1. There is no "in personam" jurisdiction over the third-party defendants because the third-party complaint does not arise from a transaction of business in the Commonwealth of Puerto Rico. The attempted service of the third-party complaint fails here because it does not satisfy the plain terms of the Puerto Rican "long-arm statute" which requires that a claim be founded on transactions occurring within the Commonwealth of Puerto Rico. As with most other "long-arm statutes", Rule 4.7 of the Rules of Civil Procedure of the Commonwealth of Puerto Rico provides that personal jurisdiction can be obtained if the claim arises as a result of a person carrying out business transactions within Puerto Rico, but the third-party complaint does not arise from transactions carried out by the third-party defendants in Puerto Rico, but from a transaction carried out in New York and New Jersey. The third-party plaintiff's complaint is based on an alleged breach of contract by the third-party defendants, and as such, this claim arises from said contract. The execution of the contract was the transaction of business. In interpreting the New York State "long arm statute", which is quite similar to that of the Commonwealth of Puerto Rico, the Federal

Courts have held that to make and negotiate a contract is to "transact business" within the meaning of the statute. See Oil & Gas Ventures-First 1958 Fund Ltd. v. Kung, 250 F.Supp. 744 (S.D.N.Y.1966) (Weinfeld, J.); Chankalian v. Aerovías Quisqueyana, C. por A., S.D.N.Y., 67 Civ. 1347, Opinion July 31, 1967 (Frankel, J.)

But the agreement which is the basis of the third-party complaint was negotiated in New York and New Jersey. Transactions that Sutton Cosmetics, one of the third-party defendants, had with the defendant years back are not the basis of the claim against the third-party defendants; the third-party complaint springs from the New York-New Jersey contracts. The basis for the third-party plaintiff's claim is not any transaction between the third-party defendants and the defendant, but transactions negotiated and made in New York and New Jersey between third-party defendants and plaintiff. That there may be consequences affecting other persons in other jurisdictions, or that through a chain of events, one could say that transactions in the past in one jurisdiction led to the transaction giving rise to the cause of action, is not the test at all. There is no notion here of proximate causation in these statutes. See Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583 (2d Cir. 1965); United States v. Montreal Trust Company, 235 F.Supp. 345 (S.D.N.Y.1964) (McLean, J.)

■ A state does not acquire personal jurisdiction merely by being the center of gravity of the controversy or the most convenient location of litigation; more is required to sustain "in personam" jurisdiction. A plaintiff is required to establish that the proposed defendants transacted business within the geographical limits of the Court's jurisdiction, and that the cause of action being sued upon arose out of the business so transacted. Goldstein v. Compudyne Corp., 262 F.Supp. 524, 526, 527 (D.C.).

In the case at bar, the acts which plaintiff claims were instances of transacting business are remote and are not claimed to have given rise to the cause of action alleged in the third-party complaint.

■ The doctrine of fair play requires that prospective defendants not only have minimum contacts in the jurisdiction but that those contacts be meaningful and have relevance to the cause of action asserted.

Moreover, even if plaintiff could go back to the defendant's claim and not rely on its own, it could not succeed. The defendant's counterclaims are not founded on anything the third-party defendants did, but allegedly what plaintiff did. Defendant uses his former dealings with Sutton Cosmetics only to indicate a measure of damages against plaintiff as granted by Law 75, supra. Defendant does not claim that Sutton Cosmetics could not have cancelled whatever arrangement it had with him. Certainly, when Sutton Cosmetics went out of business, that was ample "just cause" to terminate whatever relationship they had.

■ In any event, plaintiff must stand on its own cause of action pleaded in the third-party complaint apart from that pleaded by the defendant on this jurisdictional issue; Agrashell Inc. v. Bernard Sirotta Company, supra, (3rd party complaint analyzed on its *own merits*).

In sum, the transaction of business here involved was a contract; that is what the third-party "action or claim" results from not remotely, but proximately. As this contract was made in New York by New York domiciliaries and a New Jersey Corporation, the subject matter of the contract was located in New York, and as no part of the contract was to be performed by any of the parties in the Commonwealth of Puerto Rico, I find no transaction of business within the Commonwealth of Puerto Rico which will support in personam jurisdiction over the third-party defendants.

2. The "long-arm" statute of the Commonwealth of Puerto Rico must be

construed not to give "in personam" jurisdiction here; for to find jurisdiction would be to raise serious constitutional questions that must be avoided.

■ There is a "deeply embedded" and "cardinal" principle of statutory construction that settles this case against a finding of jurisdiction: an interpretation of a statute that raises a serious doubt of constitutionality is to be avoided if it possibly can be. United States v. Five Gambling Devices, 346 U.S. 441, 448–449, 74 S.Ct. 190, 98 L.Ed. 179 (1953); United States v. Witkovich, 353 U.S. 194, 201, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

"The principle is old and deeply embedded in our jurisprudence that this Court will construe a statute in a manner that requires decision of serious constitutional questions only if the statutory language leaves no reasonable alternative".

(United States v. Five Gambling Devices, supra, 346 U.S. at 448, 74 S.Ct. at 194.)

There is no question that an interpretation of the Commonwealth's statute to encompass any one of the three third-party defendants would raise a most serious question under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and one in regard to the constitutional power of the Commonwealth to reach beyond its borders. That interpretation has to be avoided.

■ The third-party defendants are asked to come many miles outside the jurisdiction of their home jurisdiction —New York—to defend this action and to do so at great expense. As the Supreme Court of the United States has put it, the issue of "due process" becomes one of whether the maintenance of the suit offends "traditional notions of fair play and substantial justice". International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), McGee v. Interna-

tional Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). There also arises a question of the power of the Commonwealth to grasp people not within its borders; and that issue has been keyed to an inquiry into whether the would-be defendants are being sued on conduct in the jurisdiction that was "purposefully" designed to take advantage of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and McKee Electric Co., Inc. v. Rauland Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (July 7, 1967). There must be in the transaction sued upon a "substantial connection" with the State where the question of jurisdiction is involved. McGee v. International Life Ins. Co., supra, 355 U.S. at 233, 78 S.Ct. 199, citing Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091 (1926); Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877).

In the *McGee* case, the decision that finally placed state "long-arm" statutes on a firm constitutional footing, it is pointed out that when a suit is based on a contract, it is the contract, its execution, or actual performance under it— that must have substantial connection with the state to satisfy due process and the requirements of the proper exercise of constitutional powers of the state. In *McGee,* plaintiff was suing on an insurance contract which was delivered to the deceased in the state in which the beneficiary sued; the premiums were mailed from the state and the insured was a resident of the state when she died. In upholding jurisdiction against an attack of want of due process and lack of power, the Court noted the "manifest interest" of the state in protecting the resident widow. The "substantial connection" of the contract with the state in *McGee* was proximate—not one based on remote ac-

tion in the past that may have led to the making or delivery of the contract.

Hanson v. Denckla, supra, makes the points that are decisive here on the issue of power of a court to reach beyond its borders in distinguishing its facts from those in *McGee*. At issue in *Hanson* was the validity of a trust agreement; the question was whether a Florida court could take jurisdiction over an absent Delaware trustee. The settlor and income beneficiary became a resident of Florida after the agreement was executed in Delaware; she did carry on "several bits of trust administration" from Florida and obtained income remitted to her there by the trustee. At one point she actually executed a power of appointment in Florida. But the Court held these contacts too slight, the cause of action not having arisen directly out of an act done in Florida or "consummated in the forum State". The acts of the settlor beneficiary were not regarded as significant; what was significant was that the *trustee* defendant had not done anything in Florida. Consequently, the suit could not "be said to be one to enforce an obligation that arose from a privilege that the defendant exercised in Florida". 357 U.S. at 252, 78 S.Ct. at 1239. Florida thus was held to have no power constitutionally to take jurisdiction over the Delaware defendant.

■ Here, plaintiff would extend the limits of proximate and substantial connection beyond due process limitations. *A fortiori*, this case falls within the *Hanson* rule. The contract and transactions sued upon have nothing to do with activity in Puerto Rico by the third-party defendants; the contract was not negotiated, delivered or performed in Puerto Rico; all the assets and rights to assets were delivered in New York or New Jersey. Neither plaintiff nor any third-party defendant is a resident of Puerto Rico.

At the making of the contract no third-party defendant was "purposefully" or otherwise invoking the laws of Puerto Rico or the protection of its laws. The contract depends on no privilege "exercised" in Puerto Rico. Hanson v. Denckla, supra, at 252, 78 S.Ct 1228. That plaintiff thereafter carried on business with the defendant is not significant; it is what the would-be third-party defendants did in Puerto Rico that is important.

As the third-party defendants have never maintained an office, had employees or agents, manufactured or carried on any regular operations in Puerto Rico, nor does the plaintiff or defendant claim that the third-party defendants are liable to them for any kind of an act, contractual or tortious, done in Puerto Rico, there are no contacts of the third-party defendants with Puerto Rico which would support in personam jurisdiction over them.

Rule 4.7 of the Rules of Civil Procedure of Puerto Rico must be reasonably construed in accordance with its purposes. The legislative purpose was precisely to reach those who occasionally or incidentally do business in Puerto Rico. La Electrónica, Inc. v. Electric Storage Battery Co., 260 F.Supp. 915 (D.C.); Executive Air Services, Inc. v. Beech Aircraft Corporation, 254 F.Supp. 415 (D.C.); Martínez v. Kargeorgis, 235 F.Supp. 1012 (D.C.). But I cannot attribute to the Puerto Rican Legislature the intent to include persons whose contractual acts bear no contacts with Puerto Rico and thus give rise to a constitutional question. Due process requires that Rule 4.7 and Title 14, Section 2207, of the Laws of Puerto Rico be interpreted to exclude in personam jurisdiction over the third-party defendant.

### CONCLUSION

Finding no in personam jurisdiction over the third-party defendants, the motion of the third-party defendants to dismiss, which I shall entertain as a motion for summary judgment, is granted and the third-party complaint is hereby dismissed.

It is so ordered.